81 F.3d 91
 34 Fed.R.Serv.3d 331, 28 Bankr.Ct.Dec. 1037,
96 Cal. Daily Op. Serv. 2542,
96 Daily Journal D.A.R. 4208,
96 Daily Journal D.A.R. 4323
 In re George I. BENNY, Debtor.
Keith M. LUNDIN, Judge; Mark B. McFeeley, Judge; William
L. Norton, Judge; George C. Paine, II, Judge;
Hugh Robinson; Arthur N. Votolato, Jr.,
Judge, Plaintiffs-Appellants,
v.
L. Ralph MECHAM, Director, of the AO, Defendant-Appellee.
 No. 94-16242.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1995.
Decided March 18, 1996.
Amended April 11, 1996.
 
 Appeal from the United States District Court for the Northern District of California; Robert H. Schnacke, District Judge, Presiding and Saundra B. Armstrong, District Judge, Presiding.
 Adam Walinsky, Kornish, Lieb, Weiner & Hellman, New York City, for the plaintiffs-appellants.
 Michael E. Robinson, United States Department of Justice, Washington, D.C., for the defendant-appellee.
 Before: GOODWIN and REINHARDT, Circuit Judges, and KING,* District Judge.
 GOODWIN, Circuit Judge:
 
 
 1
 A decade after the constitutionality of the current bankruptcy court structure was settled, the denial of attorney fees to the six bankruptcy judges whose efforts, as amici, had brought about the solution that satisfied both the Constitution and the judges, has produced this appeal.
 
 
 2
 The six bankruptcy judges were plaintiffs in the first case in a series of constitutional challenges to the 1984 Bankruptcy Act. Lundin v. Mecham, 980 F.2d 1450 (D.C.Cir.1992). After the Supreme Court held the Bankruptcy Reform Act of 1978 unconstitutional in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress passed several interim measures to keep the bankruptcy courts operational until it finally enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984.
 
 
 3
 The last of the interim measures expired two weeks before Congress passed the 1984 Act. To remedy the lapse, Congress added a holdover provision that allowed all bankruptcy judges to remain in office until the Act became effective.
 
 
 4
 The Director of the Administrative Office of the U.S. Courts, on the advice of counsel, challenged the 1984 Act on the ground that it violated the Appointments Clause of the Constitution. The Honorable Keith M. Lundin and five fellow bankruptcy judges then filed for declaratory relief from the Director's challenge in the District Court in the District of Columbia. Meanwhile, in the Northern District of California, Alexandra Benny, a bankrupt debtor, challenged the authority of the bankruptcy judge to whom her case had been referred. In re Benny, 791 F.2d 712 (9th Cir.1986).
 
 
 5
 The six plaintiff judges in the Lundin case and the director all sought to intervene in Benny, and at the same time, filed a joint motion to stay the proceedings in Lundin pending developments in Benny. Five other cases based on the same challenge to the 1984 Act arose in other jurisdictions.
 
 
 6
 Judge Robert Schnacke denied the judges' motion to intervene, but treated them as amici curiae. The Department of Justice participated in Benny, arguing the same position it had advocated in Lundin. The position of the judges, but not the judges themselves, ultimately prevailed in Benny. The final decision of Judge Schnake in Benny was, verbatim, the amicus brief filed by the judges, who were technically nonparties.
 
 
 7
 After Benny, and all of the other courts that reached the issue, upheld the constitutionality of the Bankruptcy Act, Lundin was dismissed as moot. The judges then filed for a fee award under the Equal Access to Justice Act in the D.C. district court. The district court denied their application for fees, but the D.C. Circuit reversed and awarded fees for their work in Lundin. That circuit, however, declined to award fees for any of the amicus work in Benny or in the five other cases.
 
 
 8
 The six bankruptcy judges then filed in the Northern District of California an application for fees for their work as amici in the Benny case. That district court denied their fee request because they were not "parties" within the meaning of the Equal Access to Justice Act.
 
 
 9
 This appeal raises the question whether, on this unusual record, the six judges who carried the litigation to a successful conclusion were prevailing parties within the meaning of the EAJA. The statute provides for fee awards to prevailing parties in any court having jurisdiction in an action brought by or against the United States unless the position of the United States was substantially justified or other special circumstances make the award unjust. 28 U.S.C. § 2412(a-d) (1995).
 
 
 10
 The appeal is complicated by In Re Benny, 791 F.2d 712 (9th Cir.1986), in which we affirmed the Northern District order denying leave to the six bankruptcy judge plaintiffs in the Lundin case to intervene and be treated as parties in Alexandra Benny's challenge to the constitutionality of the bankruptcy court hearing her case. The government now says that our affirmance of the order of the district court denying intervention is the law of the case, and that we should not reconsider our early decision denying them party status nunc pro tunc in order that they may be awarded party status and EAJA fees for their work.
 
 
 11
 Our decision in 1986 was based upon the record then before the court, which was that six judges who were not sitting in any district within this circuit could not be affected by the trial court's decision in the then pending Benny bankruptcy in the district court, and therefore there was no abuse of discretion in denying intervention. In re Benny, 791 F.2d 712 (9th Cir.1986). That decision, published before the outcome of the Benny bankruptcy case or of the Lundin case in the D.C. Circuit could be known, rested primarily on the holding that the six judges had failed to demonstrate that the outcome of the Benny bankruptcy was capable of affecting their interest. Id. at 721. The possibility of Benny affecting the judges interests was "too tenuous to entitle them to intervene as of right." Id.
 
 
 12
 The threshold issue that we must address is whether the six judges are time barred in seeking reconsideration of this court's earlier ruling. The judges are not time barred because their appeal is timely. It raises the question of law whether the district court was correct in ruling that the bankruptcy judges are not entitled to fees because they were not intervenors, but "merely" amici in the district court.
 
 
 13
 On the record before this court in 1986, the six judges seeking to intervene were not entitled to intervention as a matter of right under F.R.Civ.P. 24(a) and the district court probably did not abuse its discretion at that time in denying intervention by permission pursuant to F.R.Civ.P. 24(b) because any decision by the district court on Alexandra Benny's claim that the bankruptcy law was unconstitutional would have no binding effect on any of the six "foreign" judges. However, as a practical matter, the only relevant and effective legal presentation to the district court on the constitutional question was contained in the brief filed by the six judges as amici, and indeed, that brief became both the framework and the text of the decision of the district court on the constitutional question. In every respect except the formal designation as parties, the six judges were the real parties in interest in the decision on the constitutionality of the statute under which all bankruptcy judges were then holding office. Soon after the In re Benny decision, the government conceded in the Lundin case and it was dismissed as moot. On any rational basis in which the purpose of the EAJA is considered with reference to the work done in Benny by and for the six judges as amici, that legal representation won the case, and should be paid for pursuant to the act.
 
 
 14
 The doctrine of "the law of the case" does not preclude our review of the denial of attorney fees now that the In re Benny litigation is concluded. As pointed out recently in Leslie Salt Co. v. U.S., 55 F.3d 1388 (9th Cir.1995), generally one panel of an appellate court will not reconsider questions which another panel has decided on a prior appeal in the same case. But this discretionary legal doctrine permits reconsideration of "previously decided questions in cases in which there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." Id. at 1393.
 
 
 15
 In this attorney fee question, there is new and different evidence which warrants reconsideration of the denial of intervention in view of the final decision in Benny. Once Benny, combined with the decisions in the other cases, had forced the Government to concede defeat and abandon its effort to unseat the bankruptcy judges, it became clear that the six judges' rights were substantially vindicated and the judges should have been allowed permissive intervention. The D.C. Circuit found that the government's defeat was a result of the other cases won by the six judges:
 
 
 16
 We recognize that the litigation in the related cases [the principal case being Benny ] had a direct impact on the result below, because the Government's lawsuits in the related cases forces it to concede here.
 
 
 17
 Lundin v. Mecham, 980 F.2d 1450, 1459 (D.C.Cir.1992). Benny was the first and most important of those related cases. The D.C. Circuit found that the six judges were the "prevailing party" within the meaning of EAJA and that the position of the Government lacked any justification. Lundin, 980 F.2d at 1461.
 
 
 18
 The Government's defeat and the D.C. Circuit's finding that Benny was essential to the ultimate success of the judges were events that had not yet happened when this court affirmed the earlier denial of the six judges' motion to intervene as parties.
 
 
 19
 In light of the substantial new evidence that Benny did directly affect the interests of the six judges, the motion to intervene should be deemed granted. The six judges were, in fact, the prevailing parties within the meaning of the EAJA and are entitled to fees. The case is remanded to the district court for a determination of fees.
 
 
 20
 Because we are reviewing and reversing the order denying intervention, we need not address the issue whether amici curiae can ever recover fees, solely as amici, under EAJA. We hold only that persons prematurely, and incorrectly, as it turns out upon full consideration of all the facts, denied leave to intervene can be retroactively granted Rule 24(b) leave in order to preserve their rights under the EAJA.
 
 
 21
 VACATED AND REMANDED.
 
 
 
 *
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation